United States District Court
Southern District of Texas
**ENTERED**
March 15, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Felicia Nicolle White, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-20-3542 |
| | § | |
| Kilolo Kijakazi,[1] | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant*. | § | |

# Memorandum and Order

Felicia Nicolle White appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 19, and Defendant's Motion for Summary Judgment, ECF No. 21. Having considered the motions, administrative record, and applicable law, the final decision of the Commissioner is affirmed.

## 1. Procedural Posture and Background

White applied for disability insurance benefits and supplemental security income on September 26, 2017. Tr. 226, 236. The SSA denied White's application on June 14, 2018. Tr. 109–10. White sought reconsideration, which was granted,

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

and, on October 30, 2018, her applications were again denied. Tr. 141–42. At White's request, Administrative Law Judge (ALJ) Michelle Weitsel held a hearing on August 16, 2019, in Houston, Texas. Tr. 39–71. The ALJ issued a decision on September 13, 2019, finding that White was not disabled from August 6, 2017, through the date of the decision. Tr. 13–26. The Appeals Council denied White's request for review. Tr. 1–6. White timely appealed the ALJ's decision in this court when she filed a complaint and application to proceed in forma pauperis on September 30, 2020. *See White v. Comm'r of Soc. Sec.*, H-20-mc-2779, ECF No. 1 (S.D. Tex. October 16, 2020).

White claimed that she became disabled on August 6, 2017. Tr. 236. White was born on August 31, 1968, and was 48 years old on the alleged disability onset date. Tr. 24, 68.  White has an associate degree. Tr. 70. White has not worked since 2018. Tr. 247–48.

**2. Hearing**

At the hearing on August 16, 2019, the ALJ heard testimony from White and a vocational expert (VE). Tr. 30–78. White was represented by an attorney. Tr. 30.

About her medical history, White testified that she had suffered from Crohn's disease since 1994 and took medication to treat her symptoms. Tr. 35. She testified that due to Crohn's disease she experienced pain, had a special diet, wore adult diapers, and used the bathroom seven or eight times a day between the hours of 8

a.m. and 5 p.m. Tr. 36. White testified that she experienced anxiety in public if she was not aware of a close bathroom. Tr. 37. White testified that Crohn's disease compromised her immune system and she wore a mask whenever she left her home. Tr. 39–40. White testified that she was hospitalized due to Crohn's disease in 2012. Tr. 64.

White testified she suffered from severe acid reflux for which she took medication. Tr. 45. She testified that she had chest pain from congestive heart failure that caused her to take frequent breaks from physical activity. Tr. 45–46. White testified that she suffered from constant pain in her back, legs, and feet throughout the day. Tr. 38–39. White testified that she suffered constant pain from rheumatoid arthritis in her hands, legs, feet, sometimes her shoulders. Tr. 42–43. White testified that she suffered from migraine headaches which she treated with prescription medication. Tr. 44. She testified that she experienced pain in her wrists from fibromyalgia and wore compression wristbands to help her grip things. Tr. 61. She testified that she had not had surgery on her hands or back. *Id.*

White testified that she used a back brace, prescription medications, and heating pads to treat her back pain. Tr. 40. White testified that she could not sit longer than thirty minutes or stand longer than an hour. Tr. 41. She testified that she could walk less than a block. Tr. 42. She testified that she was bedridden for two or three days every month due to her Crohn's disease. Tr. 65.

About her mental health, White testified that she had difficulty socializing and interacting with supervisors. Tr. 46–47. She testified she had difficulty sustaining concentration and became overwhelmed in the workplace. Tr. 48–49. White testified that she received family therapy with her son every two to three months. Tr. 62. White testified to being psychiatrically committed for one day at some time after 2017 due to a bout of depression. Tr. 62–63.

White testified that she lived with her mother and sixteen-year-old son. Tr. 56. She testified that she helped her son get ready for school in the morning and did house chores during the day. Tr. 56–57.  She testified that she did laundry for herself and her son as well as prepared meals for the household. Tr. 58. White testified that she took care of her four dogs including feeding, bathing, and walking them. *Id*. She testified that she could not pick up her dogs that weighed between three and five pounds. Tr. 64. White testified that she attended church monthly and her son's school activities as much as she could. Tr. 58, 60. She testified that she drove short distances to the pharmacy and grocery store. Tr. 59. White testified that she grocery shopped one to two times a week for thirty minutes. Tr. 60.

About her work history, White testified that she previously worked as an office assistant, was self-employed as a home helper, office cleaner, private home cleaner and cook, was a cashier, and worked at Kindred Hospital. Tr. 49–55. The ALJ decided to question the VE based on White's past work as an office assistant,

cleaning employee, and cashier without making a determination about substantial gainful activity. Tr. 67. The VE testified that under the Dictionary of Occupation Titles (DOT) White's previous work would be classified as "cleaner II," housekeeper, office helper, and kitchen helper. Tr. 67–68. The VE explained that the work White described as cashier was classified as kitchen helper based on White's description of her duties. Tr. 68.

The ALJ asked the VE what of White's prior work a hypothetical individual of the same age, education, and vocational background as White could perform if they were limited to light work; could occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; and would need to avoid concentrated exposure to unprotected heights and wet, slippery, or uneven surfaces Tr. 70. The VE testified such a person would be able to work as an office helper under the DOT but not as White described it. *Id.*

The ALJ asked the VE a series of questions about whether the following additional conditions would impact the ability to work as an office helper: avoid concentrated exposure to extreme heat, extreme cold, fumes, dust, odors, gases, and poor ventilation; frequently reach in all directions, including overhead bilaterally; frequently handle and finger bilaterally; remember and follow detailed but not complex instructions; perform the tasks assigned but not always at a production rate pace; meet end-of-day work goals and occasionally adapt to rapid changes in the

workplace; and have occasional contact with coworkers, supervisors, and the general public. Tr. 70–71. The VE testified that none of the additional conditions would have an impact on the individual's ability to do White's past work as an office helper. *Id.*

The ALJ then asked the VE what other jobs the individual could do in the national economy under all of the foregoing conditions. Tr. 72. The VE testified that such an individual would be able to work as a counter clerk, usher, or dealer accounts investigator. *Id.* The ALJ asked the VE to confirm that these jobs could be performed with occasional contact with coworkers, supervisors, and the general public. *Id.* The VE altered her testimony to include photocopy machine operator instead of usher. Tr. 73. The ALJ then asked the VE what other jobs would be available in the national economy other than counter clerk and accounts investigator under the same hypothetical. Tr. 73. The VE testified that such an individual would be able to work as a laundry press operator and assembly press operator. Tr. 74.

The ALJ then asked the VE what jobs would be available to a hypothetical individual with the foregoing limitations if they were limited to sedentary rather than light work. Tr. 74. The VE testified that such an individual would be able to work as a document specialist, jewelry preparer, and optical goods worker. Tr. 75.

The ALJ then asked the VE to incorporate all of the limitations from the foregoing hypothetical as well as frequently reaching, handling, and fingering as well as being absent from work two or more days per month. Tr. 76. The VE testified

that such an individual would be absent too much to be maintain competitive employment. *Id.* The ALJ then asked if in lieu of being absent two or more days a month, what effect it would have if the individual would be off task twenty percent or more of the workday. *Id.* The VE testified that would also preclude employment. *Id.*

The ALJ asked the VE if her testimony was consistent with the DOT. Tr. 76. The VE testified that any discrepancy between her testimony and the DOT was due to the DOT's failure to differentiate between overhead reaching and reaching in all directions. Tr. 76–77. White's attorney declined to cross-examine the VE. Tr. 76. White's attorney also indicated the record was complete. Tr. 77.

The ALJ issued her decision on September 13, 2019, finding that White was not disabled from August 6, 2017, the alleged disability onset date, through the date of her decision. Tr. 13–26.

### 3.  Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 4. Analysis of the ALJ's Determination

### A. Step One

At step one, the ALJ determines whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2017). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2017). The ALJ correctly found that White had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 16.

### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments are severe and have lasted or are expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2017) (citing 20 C.F.R. § 404.1509 (2017)); 20 C.F.R. § 416.920(a)(4)(ii) (2017) (citing 20 C.F.R. § 416.909 (2017)). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2017).

An impairment is *not* severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

*Salmond*, 892 F.3d at 817 (emphasis omitted) *(quoting Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir. 2000)); *see also* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) (stating that an impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

The ALJ correctly stated the severity standard and found that White's obesity, degenerative disc disease of the lumbar spine, arthritis in the hands and feet, Crohn's disease, hypertension, obesity, and anxiety were severe. Tr. 16.  The ALJ found White's tachycardia was a nonsevere impairment because it was controlled by medication. *Id.* The ALJ found there was no evidence White's drug abuse would have any effect on her ability to work. *Id.*

White does not dispute these findings.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2017); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2017). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2017); *Whitehead*, 820 F.3d at 780–81.

The ALJ found that White's impairments or combination of impairments did not meet or medically equal the criteria of an impairment defined in the Listing. Tr. 16–19. The ALJ properly considered section 1.04 (degenerative disc disease), 14.09 (inflammatory arthritis), and 5.06 (inflammatory bowel disease) and correctly concluded the criteria were not met. Tr. 16–17. The ALJ considered White's hypertension and correctly concluded that it could not meet any listing criteria because it was controlled with medication. *Id*. The ALJ also considered White's obesity and found it did not meet or equal the criteria of any listing, but that the residual functional capacity (RFC) determination reflects the effect of White's obesity. Tr. 17–18.

The ALJ also properly considered 12.04 (depression) and 12.06 (anxiety) to find none of the impairments alone or combination met the listing criteria. Tr. 18–19. The ALJ properly applied the standards to find none of White's mental limitations rose above the level of moderate limitations. *Id*. The ALJ also correctly concluded White did not have a sufficient history of mental disorders or mental health treatment to meet the listing criteria. Tr. 19.

The court's review of the record shows that substantial evidence supports the ALJ's step-three findings. White does not dispute these findings.

## D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's RFC "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e), 416.920(e) (2017); *see Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 416.945(a)(1) (2017); SSR 96-8p, 1996 WL 374184, at *2–3, 5 (July 2, 1996). An RFC assessment is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 416.945(a)(1) (2017); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The RFC determination is solely the responsibility of the ALJ. *See Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012); *see also* 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3) (2017). The ALJ has the authority to interpret medical evidence of diagnoses and results when formulating the RFC. *See Taylor*, 706 F.3d at 603.

The ALJ found that White had the following RFC:

to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She should

12

avoid concentrated exposure to fumes, dusts[,] odor, gases, fumes, poor ventilation, unprotected heights, and wet, slippery, or uneven surfaces. She can frequently reach in all directions, including overhead, bilaterally. The claimant can frequently handle and finger, bilaterally. She can remember and follow detailed, but not complex instructions. The claimant can perform the tasks assigned, but not always at a production rate pace; however, she can meet the end of day work goals. She can have occasional contact with co-workers, supervisors, and the general public. She can occasionally adapt to rapid changes in the workplace.

Tr. 19. The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* (citing 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p 2017 WL 5180304 (Oct. 25, 2017)).

The ALJ considered White's subjective testimony regarding her symptoms in determining her RFC. Tr. 20–21. The ALJ thoroughly discussed White's medical records including examinations, test results, recommendations, diagnostic observations, prescription medication refill history, and hospital admissions. Tr. 21–23. The ALJ found that White's testimony about the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence." Tr. 21. The decision correctly notes that White's testimony demonstrated she had engaged in a level of activity which indicated she was not precluded from all work-related activities. Tr. 20.

The ALJ properly evaluated the psychological consultative examination (CE) of Gayle Pitcher, Ph.D. Tr. 21–22 (citing Tr. 494–499).[2] Dr. Pitcher opined that White would be "unlikely to have the ability to sustain concentration," "persist in work-related activity at a reasonable pace," "maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public," "or cope with normal pressures in a competitive work setting." Tr. 499. The ALJ discussed in detail the CE and concluded that Dr. Pitcher's opinion was "not persuasive because it is not consistent with, and supported by, other medical evidence in the record." Tr. 22; *cf.* 20 C.F.R. §§ 1520c(b), (b)(2), 416.920c(b), (b)(2) (2017). The ALJ also found that Dr. Pitcher's opinion was not persuasive because it was based on a one-time examination of White and Dr. Pitcher's observations of "signs and findings" during that examination were "moderate at worst." Tr. 22*; cf.* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3) (2017). The ALJ's findings on the persuasiveness of Dr. Pitcher's CE were legally correct and supported by substantial evidence.

The ALJ also properly evaluated Laurence Ligon, M.D.'s and Patty Rowley, M.D.'s state agency medical consultant opinions. Tr. 23. Drs. Ligon and Rowley both found that White could complete light work with postural limitations. Tr. 23.

---

[2] The ALJ improperly cited "20 [C.F.R. §§] 404.1527(e) and 416.927(e)" in her decision. The ALJ's analysis demonstrates she applied the correct standard. *See* 20 C.F.R. §§ 404.1520c and 416.920c (2017).

The ALJ found the opinions to be persuasive because they were consistent with and supported by the medical record. Tr. 23; *cf.* 20 C.F.R. §§ 1520c(b), (b)(2), 416.920c(b), (b)(2) (2017). The ALJ's findings on the persuasiveness of the state agency medical consultants' opinions were legally correct and supported by substantial evidence.

The ALJ properly evaluated James Murphy, Ph.D.'s and Matthew Turner, Ph.D.'s state agency psychological consultant opinions. Tr. 23. Drs. Murphy and Turner both found that White could understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in the routine work setting. Tr. 23 (citing Ex. 1A–2A). Drs. Murphy and Turner also both evaluated the CE by Dr. Pitcher within their opinions and concluded that it was not wholly consistent with the totality of evidence. Tr. 84, 116. The ALJ found the opinions of Drs. Murphy and Turner were persuasive because they were consisted with and supported by the medical record. Tr. 23; *cf.* 20 C.F.R. §§ 1520c(b), (b)(2), 416.920c(b), (b)(2) (2017). The ALJ's findings on the persuasiveness of the state agency psychological consultants' opinions were legally correct and supported by substantial evidence.

The ALJ's RFC determination is legally correct and supported by substantial evidence.

White argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 20 at 10–19. White argues that the ALJ failed to properly evaluate Dr. Pitcher's opinion. *Id.* at 10–13. She also argues that the ALJ gave invalid reasons for finding Dr. Pitcher's opinion unpersuasive. *Id.* 13–19. The court disagrees.

The ALJ is required to articulate how persuasive she found medical opinions in the record. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ is required to consider five factors when considering medical opinions. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5) (2017). The most important factors are whether the opinion is supported by and consistent with the medical record. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017). The ALJ is required to explain how she considered supportability and consistency when addressing a medical source's opinions or findings. *Id.*

As discussed above, the ALJ explicitly stated she considered Dr. Pitcher's opinion to be unpersuasive because of the supportability, consistency, and length of treatment relationship factors. Tr. 22. The ALJ came to that conclusion after a thorough discussion of Dr. Pitcher's own findings. Tr. 21–22. White appeared normal throughout Dr. Pitcher's evaluation, except that she was occasionally tearful, and her concentration and attention were mildly deficient. Tr. 494–99. The ALJ's discussion and conclusion within her RFC determination conforms with the relevant

regulations and is legally correct. The ALJ also thoroughly discussed White's mental impairments at step three in her decision. Tr. 18–19. The ALJ explicitly cited Dr. Pitcher's opinion in her step-three discussion. Tr. 18 (citing Ex. 2F). It is clear to the court that the ALJ fully considered all of the evidence in the record when evaluating Dr. Pitcher's opinions.

White argues that the ALJ's decision to find Dr. Pitcher's opinion unpersuasive based on lack of consistency with and lack of support in the medical record is not supported by substantial evidence. ECF No. 20 at 13–14. The court disagrees. Dr. Pitcher's opinion is inconsistent with multiple medical records from the relevant period which contain examination notations that White had no psychological difficulties. *See* Tr. 483, 487–88, 492, 521, 522, 557. On three occasions in 2019, evaluations by Najmuddin Karimjee, M.D., found White had "minimal depression." Tr. 625, 641, 652.  Again, Dr. Pitcher's opinions were inconsistent with her own evaluation of White, as well as the state agency psychological consultants' opinions. The latter had the benefit of a full medical record, which included Dr. Pitcher's consultative examination. Substantial evidence supports the ALJ's finding that Dr. Pitcher's opinion was not consistent with or supported by the medical record.

White also argues that the ALJ should not have relied on the state agency consultants' opinions in making her RFC determination. ECF No. 20 at 14–17. The

ALJ may, in her discretion rely on the state agency consultants' opinions in formulating the RFC. *Rodela v. Comm.'r of Soc. Sec.,* 2021 WL 4398384 at *3 (S.D. Tex. Sept. 27, 2021) ("[T]he ALJ assessed the supportability and consistency of the competing medical diagnoses and chose to rely on that which best fit the record. This is the proper job of the ALJ. If the ALJ were not empowered to do this, there would be no way to resolve a contested case.") As addressed above, the ALJ properly evaluated the required factors of supportability and consistency for the state agency consultants' opinions. There was no error regarding the ALJ's use of the state agency consultants' opinions.

White has not shown that she required more limitations than the ALJ included in the RFC. The ALJ's RFC determination is legally and factually correct.

**E. Step Four**

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f) (2017); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2017). "Past relevant work" refers to substantial gainful activity performed within the last 15 years. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (2017). If a claimant has no past relevant work,

the ALJ will proceed to step five. *See* 20 C.F.R. §§ 416.920(g)(1), 404.1520(g)(1) (2017).

White testified that she previously worked as an office assistant, was self-employed as home helper, office cleaner, private home cleaner and cook, and worked as a cashier. Tr. 49–55. Based on the VE's testimony, the ALJ classified White's prior work under the DOT as a "cleaner II," housekeeper, office helper, and kitchen helper. Tr. 23–24. The record demonstrates the ALJ relied on the VE's testimony and found that White was not capable of performing her past relevant work based on her RFC. Tr. 24. White does not dispute these findings.

## F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v) (2017). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g) (2017).

The ALJ found that White could perform jobs that exist in significant numbers in the national economy. Tr. 24–25. The ALJ relied on the hearing testimony of the VE that an individual of White's age, education, and RFC would be able to work as

19

a photocopy machine operator, laundry press operator, or assembly press operator. Tr. 25. White's attorney declined to cross-examine the VE. Tr. 76.

Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and White was given an opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

## 5. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court

grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

Signed at Houston, Texas on March 15, 2022.

_____
Peter Bray
United States Magistrate Judge